UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TINA WAYMIRE,

    Plaintiff,

vs.

MIAMI COUNTY
SHERIFF'S OFFICE,

    Defendant.

Case No. 3:15-cv-159

Magistrate Judge Michael J. Newman
(Consent Case)

---

**DECISION AND ENTRY: (1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT HER DISCOVERY RESPONSES (Doc. 37); (2) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 31); AND (3) DENYING PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 33)**

---

This civil consent case is before the Court on the following three motions: (1) Plaintiff's motion for leave to supplement her discovery responses (doc. 37); (2) Defendant's motion for summary judgment (doc. 31); and (3) Plaintiff's cross-motion for partial summary judgment (doc. 33). The Court has carefully considered all of the documents before it, and the parties' motions are now ripe for decision.

    **I.    NATURE OF THE PROCEEDINGS AND UNDISPUTED FACTS**

Plaintiff served as a member of the Miami County Sheriff's Office K-9 Unit from 1995 until 2014. She was charged with caring for, maintaining, and housing K-9 Officer Nero seven days a week starting in 2004. Defendant required Plaintiff to ensure that K-9 Officer Nero was nourished, in good health and ready and available for service at a moment's notice.

Plaintiff had four agreements with Defendant pertaining to her employment: (1) the Sherriff's Office Personnel Policy Manual that Plaintiff agreed in writing to follow (doc. 34-6);

(2) a collective bargaining agreement ("CBA") (doc. 34-4); (3) a March 1996 written agreement between Plaintiff and Sheriff Cox (doc. 34-3); and (4) a subsequent 1996 oral agreement between Plaintiff and Defendant. Only the latter two agreements dealt directly with Plaintiff's compensation for caring for her assigned K-9 officer.

It is undisputed that under the March 1996 written agreement, Plaintiff was assigned a department vehicle to drive to and from work in exchange for caring for her then-assigned K-9 officer, a dog who was not K-9 Officer Nero. It is also undisputed that the parties orally agreed in 1996 that plaintiff was able to leave a half hour early on on-duty days with no reduction in pay in order to partially compensate her for off-duty time spent caring for K-9 Officer Nero.

Plaintiff initiated this case on May 1, 2015. Her complaint contained a single cause of action alleging that Defendant failed to pay her overtime for off-duty care of K-9 Officer Nero in violation of the Fair Labor Standards Act ("FLSA"). Plaintiff claims unpaid overtime from May 1, 2012 through her last day as a K-9 Deputy on April 20, 2014, with the exception of when she was on injury leave with full compensation from September 11, 2013 through January 6, 2014.

## II.  PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT HER DISCOVERY RESPONSES

Plaintiff filed her motion for leave to supplement two interrogatory answers in response to Defendant's request -- in its memorandum in opposition to Plaintiff's motion for partial summary judgment -- to strike two of Plaintiff's declarations filed in support of her cross-motion for summary judgment. Doc. 44 at PageID 1514-15. Specifically, Defendant seeks to strike the following: (1) Joseph Mahan's declaration (allegedly because he was not disclosed in interrogatory answers as a witness) and (2) the part of Plaintiff's declaration that conflicts with a prior interrogatory answer she gave regarding the number of uncompensated overtime hours she worked caring for K-9 Officer Nero while off duty . *Id*.

2

In her motion to supplement, Plaintiff argues that the facts at issue -- that Mr. Mahan possessed information relevant to the litigation, and that Plaintiff performed four hours of uncompensated work on on-duty days and two hours of uncompensated work on off-duty days -- were made known to Defendant during Plaintiff's May 9, 2016 deposition. Doc. 44 at PageID 1514-15. Plaintiff did not file her proposed supplemental answers to interrogatories in her motion to supplement, but Plaintiff implicitly seeks to supplement two of her December 4, 2015 responses to Defendant's interrogatories in order to incorporate her deposition testimony. *See* doc. 37 at PageID 1379. First, Plaintiff seeks to supplement her response to interrogatory #3 (which requested that Plaintiff identify all persons she intended to call as a witness, both lay and expert, at trial) to include Mr. Mahan. *Id.* Second, Plaintiff seeks to supplement her response to interrogatory #8 (which requested that Plaintiff itemize and set forth the calculation of all compensation, overtime, and back pay relative to the number of hours claimed for uncompensated work time) to now reflect her deposition testimony "that she spent four hours per day caring for K-9 Officer Nero on her on-duty days and two hours per day caring for him on her non-duty days." *See id.* at 1379 (citing doc. 30-1 at PageID 98; Waymire Dep. Tr. P. 18).[1]

Under Rule 26(e), a party who has made a Rule 26(a) disclosure or responded to discovery requests must provide timely supplementation "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

---

[1] The Court is aware that on August 16, 2016, Plaintiff served Defense counsel with Plaintiff's Supplemental Responses to Defendant's Miami County Sheriff's Office First Set of Interrogatories. Doc. 41-1 at PageID 1447. However, because these supplemental responses were not filed in any pleading, the Court has limited its review of Plaintiff's motion to supplement to the information provided by Plaintiff in her memorandum in support of her motion filed on July 28, 2016. *See* doc. 37.

In regards to interrogatory #3, the Court agrees with Plaintiff that she made the identity and the significance of Mr. Mahan's knowledge known to Defendant during her deposition. *See* doc. 37 at PageID 1379. Plaintiff testified at her deposition that she had an oral agreement with Chief Deputy Mahan, who acknowledged that she was spending in excess of the compensated time of thirty minutes per day after her shift caring for K-9 Officer Nero. Doc. 37 at PageID 1379 (citing doc. 30-1 at PageID 103-104; Waymire Dep. Tr. P. 41-43). Therefore, Plaintiff's deposition testimony "otherwise made known" to Defendant that Mr. Mahan was an individual with knowledge significant to this litigation, and thus, meets the requirements of Fed. R. Civ. P. 26(e)(1)(A). *See Sjostrand v. Ohio State Univ.,* No. 2:11-cv-00462, 2014 WL 4417767, at *2 (S.D. Ohio September 8, 2014) (holding that the phrase "made known to the other party" requires that the opposing party had reason to know that the undisclosed witness at issue had "knowledge supporting the opposing party's litigation position"); *see also Harding v. Cianbro Corp.,* 436 F.Supp.2d 153, 163 (D. Me. 2006) (finding that where the identity of a witness was made known to opposing counsel during the course of discovery, formal supplementation was unnecessary). Moreover, the Court also notes that interrogatory #3 asked for identification of witnesses to be used at trial, and that Mr. Mahan's declaration has been offered as evidence in support of Plaintiff's motion for partial summary judgment, not trial. *See* docs. 33-7 and 41-1 at PageID 1451.

In regards to interrogatory #8, the Court agrees with Plaintiff that her deposition testimony -- "that she spent four hours per day caring for K-9 Officer Nero on her on-duty days and two hours per day caring for him on her non-duty days" -- made the "corrective information" (for her calculation of all compensation, overtime, and back pay relative to the number of hours claimed for uncompensated work time) "known" to Defendant as required by Fed. R. Civ. P.

26(e)(1)(A). The undersigned finds that it was not necessary for Plaintiff to file a separate pleading alerting Defendant to the supplemental information. *See Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) (finding the duty to supplement "does not require an application of form over substance").

Accordingly, the Court **GRANTS** Plaintiff's motion to supplement in so much as it reflects Plaintiff's deposition statements discussed above. *See* doc. 30-1 at PageID 98, 103-4; Waymire Dep. Tr. P. 18, 41-43.

### III. CROSS-MOTIONS FOR SUMMARY JUDGMENT

**A.** *Standard of Review*

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*. "[T]he standards upon which the [C]ourt evaluates the motions for summary judgment does not change simply because the parties present cross-motions." *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991) (internal citations omitted).

When a party without the burden of proof -- typically a defendant -- seeks summary judgment, that party bears the initial burden of pointing to an absence of evidence supporting the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000). Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Tech., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment "must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted).

A moving party with the burden of proof -- typically the plaintiff -- faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As held by the Sixth Circuit, when the party with the burden of proof moves for summary judgment, he or she "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.*

**B.**     *The Fair Labor Standards Act*

The FLSA, when reduced to its essential form, requires employers to compensate employees for all hours worked. Fair Labor Standards Act of 1938, § 1 *et seq.*, 29 U.S.C. § 201 *et seq*. The purpose of the FLSA is to set limits on minimum wages and the number of hours an employee is permitted to work before the employer is required to pay overtime. 29 U.S.C. §§ 206-07. The FLSA requires employers to pay their employees "at a rate not less than one and one-half times the regular rate" for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). Employers who fail to do so may be liable to their affected employees "in the amount of their . . . unpaid overtime compensation" and "in an additional equal amount as

6

liquidated damages." 29 U.S.C. § 216(b).

"The legislative debates indicate that the prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945).  The FLSA entrusted enforcement to those employees: "If there shall occur violations of either the wages or hours, the employees can themselves . . . maintain an action in any court to recover the wages due them . . . . [Section 216 of the FLSA] puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights . . . ." *Id.* at 706 (citations omitted).

To prevail in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he or she "performed work for which he [or she] was not properly compensated." *Integrity Staffing Solutions, Inc. v. Busk*, ⎯⎯ U.S. ⎯⎯, 135 S.Ct. 513, 516-17 (2014) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  As the Supreme Court has noted, "[t]he remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee." *Mt. Clemens Pottery Co.*, 328 U.S. at 687.

C. *Defendant's Motion for Summary Judgment*

Defendant makes five arguments in support of its motion for summary judgment on Plaintiff's FLSA claim for unpaid overtime compensation related to her training and care of K-9 Officer Nero: (1) Plaintiff fails to name a party capable of being sued; (2) Plaintiff's failure to document and submit for payment all of her hours worked precludes her from recovering under the FLSA; (3) the arbitration procedure contained in Plaintiff's CBA is the sole forum in which

she may seek redress of her FLSA rights ; (4) Plaintiff did not work in excess of the applicable hours in the 28-day work period under 29 U.S.C. § 207(k) of the FLSA; and (5) Plaintiff's care of K-9 Officer Nero did not constitute compensable "work" under the FLSA.  As explained in more detail below, the Court finds Defendant's arguments unpersuasive and therefore denies Defendant's motion for summary judgment.

### 1. Whether Plaintiff Fails to Name a Party Capable of Being Sued

In its prior Order denying Defendant's motion to dismiss, the Court found that Defendant forfeited the defense of lack of capacity to be sued because it failed to timely raise that defense. *See* doc. 28.  Therefore, that ruling is the law of the case, and Defendant's motion for summary judgment as to this issue is denied.  *See Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 820 F.3d 833, 843 (6th Cir. 2016)( "Under the law of the case doctrine, findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation.")

### 2. Whether Plaintiff's Alleged Failure to Document and Submit for Payment All of Her Hours Worked Off Duty Precludes Her From Recovering Under the FLSA

Citing to the Sixth Circuit's decision in *White v. Baptist Mem'l Health Care Corp.* for support, Defendant argues that it provided Plaintiff a "reasonable process" for her to report uncompensated work time, and her failure to utilize this procedure prevents Plaintiff from now collecting alleged unpaid compensation under the FLSA.  Doc. 44 at PageID 1525; 699 F.3d 869 (6th Cir. 2012) (holding that if an employer established a reasonable process for an employee to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow the established process).  Defendant claims that the Sherriff's Office Personnel Policy Manual (the "Manual"), which Plaintiff agreed in writing to comply with, required

8

Plaintiff to accurately record the time she worked on-duty and off-duty caring for K-9 Officer Nero. Doc. 40 at PageID 1431. Specifically, Defendant cites to Section 4.05 of the Manual, which states in pertinent part:

> A. Payment of Wages is dependent on the proper recording of the time spent at the worksite in providing services to the employer and the public-at-large. In order to accurately record the amount of time worked, time records are utilized in documenting the number of hours worked by an employee.
>
> . . .
>
> C. It is the responsibility of every employee individually to report their own starting and ending times for each shift of work so that wages can be determined. Failure to do so will result in the loss of pay for the shift or work in question unless extenuating circumstances exists. In addition, failure to report time worked, misrepresentation of time worked, the altering of any time record or allowing a time records to be altered by others may result in discipline.

Doc. 34-6 at PageID 552. Defendant argues that Plaintiff is not entitled to compensation for any time she failed to report because the reporting policy quoted above was reasonable, and it is undisputed that Plaintiff did not record the number of hours she worked off duty while caring for K-9 Officer Nero. Doc. 40 at PageID 1431.

In order to prevail on this point, Defendant invites this Court to find, as a matter of law, that the Manual clearly applies to Plaintiff's work while off-duty. The Court declines to so find. Indeed, if anything, the verbiage from Section 4.05 of the Manual strongly suggests that it was meant to govern only how Plaintiff was to report her hours worked while *on duty and* does not apply to her work while *off duty. C.f. White,* 699 F.3d at 896 (finding an employer not liable for non-payment under the FLSA where an employer had established a reasonable process for an employee to report uncompensated work time while on duty and the employee failed to report the on-duty worktime he later claimed was uncompensated). Specifically, the Manual's

9

provision -- that employees are to record their "time spent at the work site" and report "their starting and ending times of each shift" -- suggests that this policy was to apply to employees' *on-duty* work only. Doc. 36 at PageID 843 (citing doc. 34-6 at PageID 552). At a minimum, there is a genuine issue of material fact as to whether the Manual was meant to apply to Plaintiff's off-duty work spent caring for K-9 Officer Nero.

This is particularly true since, absent a clear and reasonable policy to the contrary, the FLSA charges employers, such as Defendant, with the task of maintaining "proper records of wages, hours and other conditions and practices of employment." *Mt. Clemens Pottery Co.*, 328 U.S. at 686-87. Under the FLSA, employers, not employees, are seen as being "in [the] position to know and to produce the most probative facts concerning the nature and amount of work performed. *Id.*

Accordingly, Defendant's motion for summary judgment based on Plaintiff's alleged failure to document and submit for payment all of her hours worked off duty is **DENIED**.

### 3. Whether the Arbitration Procedure Contained in Plaintiff's CBA is the Sole Forum in Which Plaintiff May Seek Redress of Her FLSA Rights

Defendant next argues that summary judgment should be granted in its favor because the sole forum in which Plaintiff may seek redress of her FLSA rights is the arbitration procedure contained in her CBA. Doc. 31 at PageID 191, 199; doc. 34-4 at PageID 432-36.

While a collective bargaining agreement may indeed require arbitration of statutory claims (like Plaintiff's FLSA claims), thereby baring employees from suing in court, a collective bargaining agreement "may only do so if the agreement's arbitration provision *expressly* covers statutory rights." *Campbell v. Kelly*, No. 3:09-cv-435, 2011 WL 3862019, at *9 (S.D. Ohio Aug. 31, 2011) (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263-65 (2009)) (emphasis added).

Here, Plaintiff's CBA does not expressly cover statutory rights (and Defendant does not

argue otherwise). Thus, Plaintiff's failure to use her CBA arbitration procedure is inconsequential, and Defendant's request for summary judgment based on this ground is **DENIED**.

### 4. Whether 29 U.S.C. § 207(k) of the FLSA Applies to Plaintiff, and If So, Whether Plaintiff Worked In Excess of The Hours in the Applicable 28-Day Work Period

29 U.S.C. §207(a) of the FLSA requires employers to pay overtime to employees who work more than 40 hours per week. 29 U.S.C. § 207(a). 29 U.S.C. § 207(k), however, contains a partial exemption from the overtime provisions of § 207(a) in that public agencies, such as Defendant, may establish a "work period" that lasts from seven to twenty-eight days for employees engaged in law enforcement or fire protection activities. In such a circumstance, only employees who work more than 171 hours in a twenty-eight day work period are entitled to overtime pay. 29 U.S.C. § 207(k)(1); 29 C.F.R. §§ 553.201(a), 553.230; *Franklin v. City of Kettering*, 246 F.3d 531, 533-34 (6th Cir. 2001).

Under §207(k), public agencies must pay overtime only when employees have "tours of duty which in the aggregate exceed" 171 hours in a twenty-eight day period. 29 U.S.C. § 207(k). Additionally, the regulations specifically caution that a work period is not the same as a work week or pay period. The burden is on the employer to prove it has adopted a §207(k) work-week exemption. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97 (1974).

In the present case, it is undisputed that Plaintiff's employment is governed by her CBA. Doc. 31 at PageID 190; doc. 39 at PageID 1421. The Court further finds that it is undisputed that Section 16.1 of the CBA applies § 207(k) to Plaintiff's employment.[2] In accordance with § 207(k), the Court finds that Plaintiff's CBA entitled her to overtime for any time "worked in

---

[2] Section 16.1, states in pertinent part that "in cases of Department of Labor complaints, Title 29 USC Section 207(k) shall be utilized for the purposes of determining the Employer's compliance with the Fair Labor Standards Act (FLSA)." Doc. 34-4 at PageID 445.

excess of eight and one-half (8 ½) hours per day or one-hundred and sixty-one and one-half (161 ½) hours during a twenty-eight (28) day work period." Doc. 34-4 at PageID 445.

Defendant argues that it is entitled to summary judgment, pursuant to § 207(k), because Plaintiff's estimation of the overtime she is owed is based on a 40-hour work week rather than the 161 ½ hours per 28-day work period that governed her employment under the CBA. Doc. 40 at PageID 1430. Specifically, Defendant claims that Plaintiff's estimation of how much overtime compensation she is owed "fails to prove by a preponderance of the evidence that she performed work in excess of the applicable 28-day work period for which she was properly compensated" entitling Defendant to judgment as a matter of law. *Id.*

In a case where the employer fails to maintain adequate and accurate records, as Defendant admits here, a Plaintiff must prove, by a preponderance of the evidence, that she "performed work for which [she] was not properly compensated." *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (citing *Mt. Clemens Pottery*, 328 U.S. at 687). However, the Sixth Circuit has made clear that, at the summary judgment stage, a Plaintiff's testimony as to how much uncompensated work she performed is enough to meet her burden. *Accord Moran*, 788 F.3d at 205.

Consequently, Plaintiff's estimation, that on average she was not compensated for 28 hours of off-duty work per week, is enough to create a genuine issue of material fact as to whether she is owed overtime under § 207(k). Accordingly, Defendant's motion for summary judgment on this basis is **DENIED**. *See Moran,* 788 F.3d at 204-05.

     5.    **Whether Plaintiff's Off-Duty Care of K-9 Officer Nero Is Compensable "Work" Under the FLSA**

The Sixth Circuit addressed a case similar to the present matter in *Brock v. City of Cincinnati*, where the Court reviewed claims brought under the FLSA by police officers seeking

12

back wages for time spent providing off-duty care for dogs in their k-9 unit. 236 F.3d 793 (6th Cir. 2001). The Sixth Circuit identified three relevant inquiries to be made in addressing the amount of compensable off-duty hours under the FLSA:

> 1) How much of the time spent by handlers in caring for their canine charges while off-duty is compensable "work" under the FLSA? 2) Is that amount of time *de minimis,* so that the FLSA does not mandate compensation? 3) Have the parties reached a reasonable agreement to compensate the handlers for non-*de minimis* time spent in "work" under the FLSA?

*Id.* at 800. As explained in more detail below, the Court finds that there is a genuine issue of material fact on each of the three *Brock* inquiries.

### a. *"Work" Under the FLSA*

The Sixth Circuit enunciated a tripartite definition of "work" as physical or mental exertion that is: "(1) 'required or suffered' by the employer; (2) 'pursued necessarily and primarily for the benefit of the employer and [the employer's] business'; and (3), as to activity performed off-duty, is 'an integral and indispensable part of the principal activities for which covered [employees] are employed.'" *Campbell*, 2011 WL 3862019, at *9 (citing *Brock*, 236 F.3d at 800).

As to the first element, the Manual undisputedly required Plaintiff to care for K-9 Officer Nero before shifts, during shifts, after shifts, and on days off. Doc. 34-6. Therefore, Plaintiff's off-duty activities caring for K-9 Officer Nero satisfy the first prong of the *Brock* "work" definition.

As to the second element, Defendant argues that the time Plaintiff spent taking care of K-9 Officer Nero "was not primarily for the benefit of the Sheriff's office." Doc. 31 at PageID 195. Specifically, Defendant claims that Plaintiff would have performed "the same daily dog duties" caring for her own dog, Spike, regardless of whether she was responsible for caring for

13

K-9 Officer Nero. *Id.* Defendant even goes so far as to argue that K-9 Officer Nero was "friends" with Spike and therefore Plaintiff's care of K-9 Officer Nero actually benefited Plaintiff by providing a playmate for Spike. Plaintiff claims that all of the duties she performed to ensure that K-9 Officer Nero was nourished, in good health, and ready for active service were performed necessarily and primarily for the benefit of Defendant. Doc. 36 at PageID 846. Alas, there is a genuine issue of material fact as to whether an appreciable share of Plaintiff's activities related to caring for K-9 Officer Nero was done necessarily and primarily for the benefit of Defendant.

Finally, as to the third element, Defendant argues that Plaintiff's off-duty care of K-9 Officer Nero was not an integral part of her principal activities as a police officer. In *Brock,* however, the Court found that the municipal defendant's requirement that officers "take [their] canines home with them, look after them at all times, keep them well-nourished and in good health, and have them ready for recall to active service at a moment's notice" made the off-duty K-9 officers' care an integral part of the plaintiffs' jobs as police officers. *Brock*, 236 F.3d at 804. Here, the Manual contains similar mandates requiring Plaintiff to directly supervise the K-9 officer at all times, keep the K-9 officer trained to its fullest ability, and remain responsible for grooming and daily care of the K-9 officer. *See* doc. 33-4 at PageID 374. Under such circumstances, there is a genuine issue of material fact as to whether Plaintiff's off-duty care of K-9 Officer Nero was an integral part of her principal activities as a police officer. *Campbell*, 2011 WL 3862019, at *9 (citing *Brock*, 236 F.3d at 802-04).

In sum, the evidence shows that there are genuine issues of material fact as to whether Plaintiff's off-duty care of K-9 Officer Nero meets each of the elements for compensable "work" under the FLSA, and entry of summary judgment on this basis, therefore, is **DENIED**.

      **b.**     *The De Minimis Work Doctrine*

Even if some of Plaintiff's activities qualify as "work" under the FLSA, "work" is not compensable if the amount of work is *de minimis. Brock,* 263 F.3d at 804. *Brock* referenced the following three factors to determine whether otherwise compensable "work" is *de minimis:* (1) the size of the claim in the aggregate; (2) whether the claimant performed the work on a regular basis; and (3) the practical administrative difficulty of recording the additional time. *Brock,* 263 F.3d at 804 (citing *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984)).

The Sixth Circuit found that the hour a day spent off-duty by the officers in *Brock* caring for their respective K-9 officers was not *de minimis*. *Brock*, 236 F.3d at 804. The Court reasoned that although the nature of the officers' at-home care was not easily monitored, such an administrative difficulty was outweighed by the total amount of time spent and the regularity of which the officers cared for their K-9 officers. *Id*.

As in *Brock*, Plaintiff's claim for uncompensated off-duty work -- four hours of uncompensated work on on-duty days and two hours of uncompensated work on off-duty days -- well exceeds a *de minimus* amount. Doc. 44 at PageID 1514-15. This Court presumes, like the Sixth Circuit in *Brock*, that regardless of which party would have been responsible for requiring or attempting it, meaningful monitoring of Plaintiff's at-home K-9 duties would have proven "difficult, expensive, and intrusive." *Brock,* 263 F.3d at 804.

Therefore, Plaintiff's evidence is at least sufficient to create a genuine issue of material fact as to whether the regularity and amount of her uncompensated work in the aggregate is not *de minimus*. Thus, Defendant's motion for summary judgment as it relates to the *de minimus* doctrine is **DENIED**.

15

      **c.**     *Reasonableness of The Agreement*

In regards to the "reasonableness" of an agreement to compensate k-9 handlers for non *de minimus* "work," the *Brock* Court explained that "[b]ecause of the difficulty in determining the exact hours worked in circumstances where unsupervised employees can divide their time between 'work' and personal pursuits, 'any reasonable agreement of the parties which takes into account all of the pertinent facts will be accepted.'" *Brock*, 236 F.3d at 806 (citing 29 C.F.R. § 785.23).

In the present mater, it is undisputed that Plaintiff entered into a written agreement and subsequent verbal agreement with the Sheriff's Office upon accepting a K-9 duty position in 1996.  Doc. 31 at PageID 190; doc. 36 at PageID 838.  The written 1996 agreement consisted of a memorandum sent by Sheriff Cox to Plaintiff, which she signed.  Doc. 34-3.  The agreement stated in pertinent part:

> Since you are now certified as the department K-9 officer, and your dog is now certified, it is time to address the use of the vehicle that has been equipped for your use and has been assigned to you.
>
> . . .
>
> As a tradeoff for allowing you the permanent use of this vehicle, to respond from your home, would be that the Miami County Sheriff's Office would not owe you any monetary amount for the care and the maintenance of the dog.

Doc. 34 at PageID 1.  It is further undisputed that the parties entered into an oral agreement shortly following the written agreement.  Doc. 33 at PageID 280; doc. 31 at PageID 190.

The Court finds that, as a matter of law, both agreements are unclear as to the intent of the parties to apply the agreement to only Plaintiff's assigned K-9 officer at the time of the agreement or all other K-9 officers Plaintiff may have been assigned for the duration of her employment with Defendant.  Specifically, the 1996 written agreement uses phrases such as "the

dog" and "your dog." It is undisputed that K-9 Officer Nero, the only dog related to Plaintiff's FLSA claim in this case, became a Miami County Sheriff Department K-9 Officer eight years after the creation of the 1996 written agreement. Doc. 36 at PageID 835. Therefore, a genuine issue of material fact exists as to the parties' intent to apply the 1996 written agreement to Plaintiff's care of K-9 Officer Nero.

The 1996 written agreement does not include an integration clause, and therefore, parole evidence as to the parties' intent is appropriate. *Aero Fulfillment Services Corp. v. Orcale Corp.*, 186 F. Supp. 3d 764, 771 (S.D. Ohio 2016) (holding that under Ohio law, when a written agreement is ambiguous and not fully integrated, *i.e.* does not contain the full understanding of the parties, the law permits consideration of parole evidence to determine party intent). Parole evidence, which has not been offered by either party on the issue above in their summary judgment pleadings, would be appropriate at trial to determine the parties' intent.

In addition, neither party has set out in any detail the terms of the 1996 oral agreement reached subsequent to the written agreement other than a general averment that Plaintiff was able to leave a half hour early on on-duty days with no reduction in pay. Doc. 31 at PageID 190; doc. 36 at PageID 838. Defendant claims that Plaintiff was already obligated to do all the care and maintenance of K-9 Officer Nero pursuant to the 1996 written agreement. Doc. 31 at PageID 190. Therefore, there is a genuine issue of material fact as to whether the subsequent oral agreement is supported by inadequate. *See Wright v. Bank of America, N.A.,* 517 Fed. App'x 304, 307 (6th Cir. 2013) (holding that under Ohio law, a valid contract requires mutual consideration).

In light of the foregoing, there are genuine issues of material fact as to what the parties agreed to in their 1996 written agreement and subsequent oral agreement, as well as whether the

17

oral agreement is supported by mutual consideration. At this time, and on the record now before the Court, the meaning and applicability of the agreements cannot be assessed. Because of the aforementioned genuine issues of material fact existing at this stage of the proceedings, the reasonableness of the agreements cannot be addressed and Defendant's motion for summary judgment on this ground is **DENIED**.

D. *Plaintiff's Cross-Motion for Summary Judgment*

Plaintiff seeks partial summary judgment as to liability on Count I of her complaint, claiming violations of the FLSA, with the exact amount of unpaid wages, liquidated damages, and attorney's fees to be determined at trial. Doc. 33 at PageID 274. In support of her motion, Plaintiff argues the following: (1) she regularly worked in excess of 161 ½ hours in a 28-day work period without the required overtime compensation; (2) her care and maintenance of K-9 Officer Nero was compensable time; (3) Defendant was aware that Plaintiff was performing at-home care and maintenance of K-9 Officer Nero without compensation; (4) her unpaid overtime is more than *de minimus*; (5) the 1996 written agreement and subsequent oral agreement are unreasonable; (6) due to Defendant's willful failure to comply with the FLSA, a three-year statute of limitations should apply to her FLSA action; and (7) Defendant is not entitled to a good faith defense.[3]

In regards to Plaintiff's arguments 1-5, the Court has already addressed each above as they related to Defendant's motion for summary judgment and found that a genuine issue of

---

[3] In Plaintiff's reply brief filed in support of her motion for partial summary judgment (doc. 39), Plaintiff asked that the last four pages of Defendant's memorandum in opposition to her motion for partial summary judgment (doc. 35) be stricken due to Defendant's failure to comply with the requirements of Local Rule 7.2 (3). Doc. 39 at PageID at 1420. On September 15, 2016, the Court granted Defendant's unopposed motion to amend their memorandum in opposition to Plaintiff's cross motion for partial summary judgment. (Doc. 43). On October 14, 2015, Defendant filed an amended memorandum in opposition to Plaintiff's cross-motion for partial summary judgment (doc. 44), which complied with the requirements of Local Rule 7.2 (3), making Plaintiff's cross-motion to strike moot.

material fact existed for all five. Consequently, Plaintiff has not met her substantially higher burden required to obtain summary judgment, and therefore, Plaintiff's cross motion for partial summary judgment as it pertains to arguments 1-5 is **DENIED**.

Plaintiff argues that a three-year statute of limitations, rather than a two-year statute of limitations, should apply to her FLSA claim because Defendant "willfully" violated the FLSA. Doc. 33 (citing 29 U.S.C. § 255(a)).  Plaintiff also states in her memorandum in support of her motion for partial summary judgment that she is entitled to liquidated damages as a matter of law, and that Defendant's potential "good faith" defense is not applicable.  However, as 29 U.S.C. § 255(a) makes clear the issue of willfulness is only ripe for discussion once an employer is found to have violated 29 U.S.C. §§ 206 or 207.  Similarly, 29 U.S.C. § 206(b) makes clear that the issue of liquidated damages and any associated good faith defense is only ripe for discussion once an employer is found to have violated 29 U.S.C. §§ 206 or 207.  Since this Court has found that there is a genuine issue of material fact as to whether such FLSA violations have occurred under §§ 206 or 207, Plaintiff's request for a ruling as a matter of law as to willfulness, liquidated damages, and any associated defenses is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's cross-motion for leave to supplement her discovery responses (doc. 37), **DENIES** Defendant's motion for summary judgment (doc. 31), and **DENIES** Plaintiff's cross-motion for partial summary judgment (doc. 33). The Court will set this case for trial by separate order.

**IT IS SO ORDERED.**

Date: 3/29/2017

s/ Michael J. Newman
Michael J. Newman
United States Magistrate Judge